**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **YEMANE SELASSIE, individually and on behalf of the Estate of AMANUEL GEBERYESUS,** | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:21-cv-41 (MTT)** |
| **GEORGIA DEPARTMENT OF CORRECTIONS, _et al.,_** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

<u>**ORDER**</u>

Plaintiff Yemane Selassie filed suit "individually and on behalf of the Estate of Amanuel Geberyesus"[1] against Defendant Georgia Department of Corrections (GDC); Defendants Timothy Ward, Annettia Toby, and Derek Hill in their individual capacities; and Defendants Does 1-5 in their individual capacities; for failure to prevent Geberyesus's death.  Doc. 1.  The Defendants moved to dismiss Counts I and III of the complaint.[2]  For the following reasons, that motion (Doc. 13) is **GRANTED**.

**I. BACKGROUND**

Selassie alleges Geberyesus was an inmate at Hancock State Prison (HSP). Doc. 1 ¶ 1.  Geberyesus was a medium-security inmate housed among close-security

---

[1] The complaint does not say whether Selassie has been appointed personal representative of the Estate.

[2] The Defendants purport to "move to dismiss all claims against them in Plaintiff's Complaint (Doc. 1)," but their brief does not address Count II of the complaint.  Doc. 13.  Although they cite caselaw, in a footnote in the facts section of their brief, noting the general rule against fictitious-party pleading in federal court, they do not move to dismiss Count II on that ground.

inmates.  *Id*. ¶¶ 21, 28.  In early February 2019, Geberyesus was placed in close-security housing, although he was classified as a medium-security inmate.  *Id*. ¶¶ 21, 26-28.  Within two days he was attacked by other inmates.  *Id*. ¶¶ 32-36.  The prison responded by placing him in solitary confinement for over a month, where he "experienced a rapid mental deterioration[.]"  *Id*. ¶ 37.  On March 20, 2019, officers discovered Geberyesus with a towel wrapped around him in a position that indicated he was attempting suicide.  *Id*. ¶ 38.[3]  Security officers took Geberyesus to a mental health counselor.  *Id*. ¶ 39.  Geberyesus told the counselor he feared other inmates and was "having thoughts of hurting himself and others," and the counselor recommended placing him in a security strip cell.[4]  *Id*. ¶ 40.  Instead he was placed in his old cell, where he committed suicide using a bedsheet on March 21, 2019.  *Id*. ¶¶ 43-44, 47.  Selassie brought suit, alleging (i) a negligence claim against GDC under the Georgia Tort Claims Act; (ii) violations of the Eighth and Fourteenth Amendments by Geberyesus's unidentified unit manager and four unidentified security officers who allegedly disregarded the mental health counselor's security strip cell recommendation; and (iii) Defendants Ward, Toby, and Hill for deliberate indifference to serious medical needs in violation of the Eighth Amendment.  *Id*. ¶¶ 72-83, 67, 68, 84-106.

The Defendants moved to dismiss, arguing (i) that GDC is entitled to sovereign immunity and (ii) that Selassie fails to allege Defendants Ward, Toby, and Hill personally participated in the constitutional violations or were causally connected to

---

[3] The complaint does not say whether he was still in solitary confinement or had been released from solitary confinement at that time.

[4] The complaint does not describe the conditions of a security strip cell, but Selassie does allege that Geberyesus would not have had access to a bedsheet if he had been placed in such a cell.  Doc. 1 ¶ 48.

them.  *See generally* Doc. 13-1.  Selassie does not oppose dismissal of the claims against GDC, and the Court agrees that GDC is entitled to sovereign immunity. Accordingly, that portion of the motion (Doc. 13) is **GRANTED**.  Doc. 15 at 17-18.

## II. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted).  Where there are dispositive issues of law, a

court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## III. DISCUSSION

Selassie does not allege that Defendants Ward, Toby, or Hill personally participated in the decision to place Geberyesus in his cell on March 20, 2019. Accordingly, she must show a causal connection between the Doe Defendants' alleged actions and the named Defendants.  "A causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quotation marks and citation omitted).

The complaint alleges that Ward is the Commissioner of the GDC and responsible for its operations, that Toby was the Warden of HSP, and that Hill was the Deputy Warden of Care and Treatment at HSP and was thus responsible for its medical, mental health, and counselling services.

Selassie argues she has plausibly alleged a causal connection in several ways. First, she argues—or appears to argue (the argument is a stretch)—that the Defendants' job duties make them liable.  Specifically, she argues that the Defendants were "responsible for 'directing, procuring, and providing medical care and suicide prevention to inmates at [HSP].'  These responsibilities involved Defendants 'promulgating and enforcing [unidentified] policies and procedures regarding medical

care and suicide prevention . . . . And these [still unidentified] policies and procedures (or lack thereof) resulted in constitutional deprivations by (1) causing medium security inmates and close security inmates to be housed together and not provided reasonable personal security, and (2) allowing suicidal inmates access to ligatures despite the orders of medical providers to the contrary."  Doc. 15 at 8-9 (citations omitted).  But that argument is nothing more than pointing out the facts of Geberyesus's case and the alleged job duties of the supervisory Defendants.  Selassie does not allege any specific policy or custom that causally connects the Defendants to Geberyesus being improperly placed in a non-security strip cell.

Next, Selassie argues "there was a custom of providing grossly inadequate medical care and suicide prevention" at HSP and the Defendants should have remedied it.[5]  *Id*. at 9.  But that alleged "custom" is merely a legal conclusion.  Selassie cites three additional instances of suicide at HSP: one in October 2017, one in July 2018, and one in July 2019.[6]  By themselves, those incidents do not allow the Court to infer that there was some unknown policy in place that caused those incidents or resulted in the prison's failure to prevent those incidents.

Selassie also argues that she does not need to allege a specific custom or policy. First, she argues that "informal customs cannot be identified in the Complaint in any more detail than by describing their operation and effect."  *Id*. at 10.  But again, Selassie

---

[5] Although this is really more of a "history of widespread abuse" argument, Selassie's brief couches it more in terms of a "custom" for which the three supervisory Defendants were allegedly responsible.  Doc. 15 at 8-9.

[6] The Defendants argue the July 2019 instance is not relevant because it took place after Geberyesus's death.  While it is true that is not relevant to the Defendants' knowledge at the time of Geberyesus's death, it could conceivably be relevant to whether the Defendants had a policy or custom that made such events more likely to occur.

does not describe the "operation" of any customs.  She simply points to the "effect[s]" and asks the Court to infer that (i) there must be a common cause and (ii) that cause must be some yet-unidentified custom implemented by Timothy Ward, Annettia Toby, *and* Derek Hill.  The plausibility pleading standard requires more.  Second, Selassie argues that "the written policies and procedures of [HSP] are largely unavailable to Plaintiff prior to discovery."  *Id*. at 10.  Although the Court acknowledges the practical difficulties of finding evidence of a policy, Selassie does not even allege a policy.  If during discovery or further investigation Selassie finds evidence of a custom or policy promulgated by Ward, Toby, Hill, or someone else, she may file a motion for leave to amend.

Selassie also argues that a history of widespread abuse put Defendants Ward, Toby, and Hill on notice of the need to correct constitutional deprivations and they failed to do so.  *Id*. at 11-14.  First, Selassie argues the complaint alleges that the prison suicide rate at GDC is twice as high as the national average, but the GDC, "[a]s compared to other state correctional systems that are facing similar issues . . . has done very little."  Docs. 1 ¶¶ 10, 12; 15 at 12.  However, the causal connection standard does not require knowledge of a *problem*, but knowledge of an alleged constitutional deprivation.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2020) ("The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.") (quotation marks and citation omitted), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).  Pointing to a prevalence of suicide is not enough; rather, Selassie would have to allege those suicides were the

result of widespread Eighth Amendment violations.  Similarly, Selassie does not allege a history of widespread abuse by the specific subordinate officers named as Doe Defendants, nor does she allege the suicides at HSP or elsewhere occurred after officers defied mental health recommendations by refusing to place inmates in security strip cells.

Selassie also argues the Defendants were aware of a history of widespread abuse at HSP—specifically, that the Defendants knew "'their subordinates were failing to carry out the orders and recommendations of medical providers.'"  Doc. 15 at 13 (citing Doc. 1 ¶¶ 102, 103).  But again, Selassie does not allege any specific previous instances when subordinates failed to act on recommendations of medical providers.  Accordingly, the allegations in paragraphs 102 and 103 are "legal conclusions masquerading as facts," which do not prevent dismissal.  *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) (citation omitted).

Finally, Selassie argues the Defendants failed to train their subordinates.  Doc. 15 at 15-16.  "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program."[7]  *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quotation marks omitted).  As noted above, Selassie does not allege any specific previous instances when the Defendants' subordinates had disregarded mental health recommendations, nor does she allege that such violations were caused by an omission

---

[7] In the context of a motion to dismiss, of course, Selassie is not required to "demonstrate" that, but only to plausibly allege it.

in a training program.  *See id*. at 1053 ("To establish that supervisor was on actual or constructive notice of the deficiency of training, a pattern of similar constitutional violations by untrained employees is ordinarily necessary.  Here, [the Plaintiff] does not allege, much less establish, a pattern of similar constitutional violations by untrained employees.") (quotation marks and citation omitted).

Selassie responds to that argument by claiming she pleaded facts that show that subordinates "fail[ed] to respond adequately to the needs of suicidal inmates."  Doc. 15 at 15.  True, Selassie alleges that emergency personnel took too long to respond to reports that two inmates were unresponsive and that a third inmate should have been placed in protective custody sooner.  Doc. 1 ¶¶ 51, 54, 57.  But those allegations, while certainly concerning in a general sense, have no relevance to this lawsuit.  Selassie did not bring claims against the supervisory Defendants because medical personnel responded too late or prison staff failed to place Geberyesus in protective custody.[8]  Accordingly, those prior incidents did not put the named Defendants on notice of a widespread history of abuse or a deficiency in the training of their subordinates.

Further, the Defendants argue—and Selassie does not dispute—that the Defendants' alleged actions were within their discretionary authority.  Docs. 13-1 at 15; 15 at 16-17.  The Court agrees.  Selassie, therefore, must allege the supervisory Defendants' conduct violated clearly established rights.  As noted, Selassie has not plausibly alleged that the supervisory Defendants personally participated in the decision to not place Geberyesus in a strip cell or had any causal connection to that decision.  In the absence of such a connection, it is impossible to conclude that any of the

---

[8] To the contrary, Selassie alleges Geberyesus was placed in solitary confinement "[a]s a result" of attacks from other inmates.  Doc. 1 ¶¶ 31-37.

supervisory Defendants violated Geberyesus's clearly established rights.  Accordingly,

the supervisory Defendants are entitled to qualified immunity.

### IV. CONCLUSION

For the reasons discussed, the Defendants' motion to dismiss (Doc. 13) is

**GRANTED**, and Counts I and III of the complaint are **DISMISSED** without prejudice.

The only remaining claims are the § 1983 claims against the Doe Defendants for

violations of the Eighth and Fourteenth Amendments.

**SO ORDERED**, this 16th day of June, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT